UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **Inland Diamond Products Co.,** | |
| *Plaintiff,* | |
| v. | Case No. 2:17-cv-416-JRG |
| **Hoya Optical Labs of America, Inc., d/b/a HOYA Vision Care, N.A.,** | **JURY TRIAL DEMANDED** |
| *Defendant*. | |

# INLAN DIAMOND PRODUCTS CO.'S BRIEF OPPOSING DEFENDANT'S MOTION TO AMEND ITS INVALIDITY CONTENTIONS

**I.      INTRODUCTION**

Hoya seeks leave to amend its invalidity contentions based solely on supposition and speculation.  Hoya claims that MEI, an Italian company, purportedly had a (secret) drawing of 100-degree cutting tools in 2004.  Separately, Hoya claims that Silhouette, an Austrian company, made three frames in November 2007 that, by 2014, had 120-degree grooves.  Hoya does ***not*** offer evidence that anyone in the United States ever made the frame and lens combination covered by the patents-in-suit before Ron Wiand filed his first patent application in 2009.  Hoya admits that it bases its motion on the discovery ***Inland*** took to prove that infringement occurred between 2014 and 2018—long after 2009.  Hoya has not taken any discovery to make the showing needed to prove invalidity, such as (1) that anyone used the MEI 100-degree (apparently secret) Italian cutting tools in the U.S. before 2009; (2) that Silhouette sold the three frames Hoya relies on in the U.S. before 2009; (3) that the three Silhouette frames had 120-degree grooves before 2009; or (4) even if (1) - (3) occurred, that anyone put lenses made with a MEI 100-degree cutting tool into one of the three Silhouette frames in the U.S. before 2009.

Hoya's motion is, at best premature, and at worst, meritless.  The Court should deny the motion.

## II.     ARGUMENT

### A.     Hoya has no *prima facie* evidence that its proposed amended contentions are meritorious

Hoya takes random, unconnected "facts" that do not amount to *prima facie* evidence of invalidity and seeks to amend its invalidity contentions.  Hoya asserts, with no evidentiary support, "Silhouette frames with lenses edged and beveled on MEI machines were in public use, on sale, and/or otherwise available to the public in the United States even before the asserted patents were filed." (Mot., p. 6.)  None of Hoya's exhibits support that claim.  Exhibit A is a redacted (and thus secret) drawing, purportedly of an MEI tool to edge lenses.  It is not evidence of Hoya's claim "that Silhouette frames with lenses edged and beveled on MEI machines were in **public** use, **on sale**, and/or otherwise available to the **public** **in the United States.**"   (*Id.*, emphasis added.) Specifically, a tool drawing is not evidence of any "use" or "sale."  Further, Exhibit A is from "an Italian company called MEI" (Mot., p. 3) and written in Italian—it does not support Hoya's claim of use or sale "in the United States."  While it has a date of "1/2004" (which is before 2009 when Mr. Wiand filed his first patent application), a *secret* drawing, regardless of date, is not prior art.[1] *OddzOn Prods., Inc. v. Just Toys, Inc*., 122 F. 3d 1396, 1402 (Fed. Cir. 1997) ("[W]hen the possessor of secret art (art that has been abandoned, suppressed, or concealed) that predates the critical date is faced with a later-filed patent, the later-filed patent should not be invalidated in the face of this 'prior' art, which has not been made available to the public.  Thus, prior, but non-public, inventors yield to later inventors who utilize the patent system.")

---

[1] The Wiand patents have a priority date of 2009, so the patent statutes in effect at that time and the cases interpreting them (not the America Invents Act) control.  Public Law 112-29, § 35 (Sept. 16, 2011) ("[T]he provisions of this Act shall take effect upon the expiration of the 1-year period beginning on the date of the enactment of this Act and shall apply to any patent issued on or after that effective date.")

Exhibit B, according to Hoya, is a list of "frame models sold [by Silhouette] within the last four years," *i.e.*, 2014-2018.  (Mot., p. 4.)  It does not support Hoya's claim of use or sale "before [2009 when] the asserted patents were filed." (Mot., p. 6.)  Exhibit B is not even evidence of use or sale "in the United States" because Silhouette is headquartered in Linz, Austria.  (*See* http://www.silhouette-international.com/silhouette/company/locations/    index.en.php, last accessed June 1, 2018.)

Exhibit C is an excerpt from the transcript of a hearing on Inland's motion to compel discovery from Hoya.  Hoya cites it for the statement made by Inland's counsel at the hearing that the 2014-2018 data provided by Silhouette "does confirm infringement."  (Exhibit C, p. 22.)  Exhibit C is not evidence of any part of Hoya's claim that "Silhouette frames with lenses edged and beveled on MEI machines were in public use, on sale, and/or otherwise available to the public in the United States even before the asserted patents were filed." (Mot., p. 6.)

In summary, Hoya has not provided Inland, or the Court, with even a *prima facie* case of invalidity based on these exhibits.  Hoya has no evidence that (1) the MEI tool drawing was other than secret, (2) the tool was used in the U.S. before 2009, (3) Silhouette sold any of the three frames in the U.S. before 2009, or (4) any of the three Silhouette frames had 120-degree grooves before 2009.  Moreover, even assuming *arguendo*, that Hoya could overcome each of these hurdles, Hoya has not shown that the 100-degree MEI tool was used to make lenses that were then put into a Silhouette frame with 120-degree grooves in the U.S. before 2009.  Hoya's motion does not cure, or even address, these fundamental evidentiary problems.  When considering "the importance of the thing that would be excluded," *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1360 (Fed. Cir. 2006), the importance is nil.

## B.     Hoya delayed unreasonably

Hoya bases its motion on discovery taken by *Inland*, not Hoya.  Hoya offers no explanation for why it did not, earlier in the lawsuit, make an effort to find the information it now relies on. Hoya is a large company that manufactures lenses and assembles them into frames.  Hoya works closely with MEI and has purchased many of edging machines it uses to manufacture lenses from MEI.  Hoya has admitted that "HOYA uses automated equipment called edgers to perform the step of cutting a bevel on to the peripheral edge of its prescription lens products.  *HOYA largely obtains those edgers from an Italian company called MEI*."  (Dkt. #77, p. 3.)  MEI has also cooperated with Hoya via phone calls with an employee in Italy who purportedly could support a possible Hoya invalidity claim (Ex. 1)—while at the same time refusing to cooperate with Inland regarding discovery (Ex. 2).  Despite this close relationship between MEI and Hoya, Hoya offers no reason why it did not obtain Exhibit A sooner.  MEI produced that exhibit to Inland (not Hoya) in response to Inland's (not Hoya's) subpoena.

The same is true with respect to the Silhouette frames.  The information Hoya cites was obtained by Inland (not Hoya) despite Hoya's has vast knowledge of the frame makers that supply the frames Hoya assembles into finished glasses.  Had Hoya been diligent, *Hoya* would have proactively obtained the Silhouette information.

Why did Hoya delay in seeking this information?  It does not say.  Hoya identifies no obstacle that prevented it from learning, long ago, the information it now relies on.  Hoya could have, and should have investigated this invalidity theory months ago and presented it timely to Inland and, if necessary, the Court.  Instead, Hoya waited until virtually the close of discovery.

Because Hoya has no explanation for why it delayed in seeking the information it now relies on, it has no viable "explanation for the failure to meet the deadline." *O2 Micro*, 467 F.3d at 1360.

4

### C. Inland would be unduly prejudiced if the Court allowed Hoya to amend its invalidity contentions at this last stage of the case

Hoya claims that allowing it to amend its contentions at this late date "will not prejudice Plaintiff." (Mot, p. 6.) On the contrary, the prejudice to Inland would be insurmountable. As discussed above, Hoya does not yet have any evidence to make a *prima facie* case of invalidity, which will impede Inland's discovery efforts. If Hoya is allowed to amend its contentions, and if Hoya undertook discovery now to fill the gaps in its theory, that would use up all of the remaining time for fact discovery and leave Inland no time to take discovery to rebut Hoya's theory. On the other hand, if Hoya did not take discovery to fill the gaps, Inland would not know where to begin to investigate Hoya's theory because the theory has no substance. Inland would be forced to wait for Hoya's expert report to learn, for the first time, the full extent of Hoya's claim. That would be too late because fact discovery would be closed.

In addition, it appears that the evidence needed for Hoya's theory lies with foreign entities, for example, MEI. It is burdensome and time consuming to take discovery from a foreign company, especially where, as here, the relevant documents are apparently in Italian. The upcoming fact discovery deadline makes obtaining discovery from MEI, or any other foreign entity, nearly impossible. The "potential prejudice in allowing the thing that would be excluded," *O2 Micro*, 467 F.3d at 1360, weighs heavily against granting Hoya's motion.

### D. Continuance

The Court has already granted one extension of fact and expert discovery due to Hoya's dilatory discovery activities, but the Court appeared disinclined to grant a continuance of the trial schedule. If the Court were to allow Hoya to amend its contentions, a continuance of the trial schedule would be necessary to give Inland sufficient time to address the new contentions. Hoya does not address this factor substantively.

5

### III. CONCLUSION

For these reasons, Inland asks the Court to deny Hoya's motion to amend its invalidity contentions.

Respectfully submitted,

/s/ John M. Halan by permission Claire Henry
John M. Halan (Michigan Bar No. P37616)
Thomas A. Lewry (Michigan Bar No. P36399)
Mark A. Jotanovic (Michigan Bar No. P73752)
**BROOKS KUSHMAN P.C.**
1000 Town Center, Twenty-Second Floor
Southfield, Michigan 48075
Telephone: (248) 358-4400
Facsimile: (248) 358-3351
Email:  jhalan@brookskushman.com
	tlewry@brookskushman.com
	mjotanovic@brookskushman.com

T. John Ward, Jr. (Texas Bar No. 00794818)
Claire Abernathy Henry (Texas Bar No. 24053063)
**WARD, SMITH & HILL, PLLC**
PO Box 1231
Longview, Texas 75606
Telephone: (903) 757-6400
Facsimile: (903) 757-2323
E-mail: jw@wsfirm.com
	claire@wsfirm.com

*Attorneys for Plaintiff*

6

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email on June 14, 2018.

*/s/ Claire Henry*